[No. 2543]

## JOHN T. READ, RESPONDENT, v. MARTIN PRADERE, APPELLANT.

[212 Pac. 1035]

1. BROKERS—FINDINGS OF EMPLOYMENT AND EXTENSION OF TIME HELD AUTHORIZED.

Evidence in action by broker for commissions for finding a purchaser, *held* to authorize the court's conclusions that defendant entered into the contract of employment on his own account, and that he extended the time within which sale might be made.

APPEAL from Second Judicial District Court, Washoe County; *Mark R. Averill*, Judge.

Action by John T. Read against Martin Pradere, Judgment for plaintiff, and defendant appeals. **Affirmed.**

*Boyd & Curler,* for Appellant:

The sole question to be presented to this court, as shown by the statement on appeal, is the insufficiency of the evidence to justify the decision, and that the decision is against law.

We submit that a review of the entire evidence in this case shows that whatever agreement or consent was given by Martin Pradere was given solely for the benefit of Yribarren and solely subject to the approval of Yribarren, and it was so understood by plaintiff.

The law involved in this case is simply elemental—that is, that the signing of the original contract by Pradere in May, 1919, shows that he was merely acting as the agent of Yribarren and for that particular purpose.

The testimony of Yribarren, "I could not read or write, and I told Martin Pradere, 'You sign it,'" and that Pradere signed at Yribarren's request in the presence of Read, would simply make that instrument the contract of Yribarren and not the contract of Pradere.

*McCarran & Mashburn,* for Respondent:

"In general it may be stated that if the broker has

acted in good faith, performed his contract, and done all that he was bound to do, and the sale with the purchaser procured by the broker is not carried out, or falls through, owing to the defective title of the principal, the vendor, the broker will still be entitled to his commission in the absence of evidence showing that the broker had knowledge of such defect, or of a stipulation to the contrary in the contract between the principal and the broker." Brackenridge v. Claridge & Payne, 43 L. R. A. 609, and cases cited.

"It may be stated as a general doctrine of the law governing the question of the revocation of a real-estate broker's agency that such agency cannot be revoked in bad faith as a device for escaping payment of commissions." Idem.

"In the absence of a stipulation in the contract to the contrary, the broker is entitled to his commission, if, acting in good faith, he procures a purchaser willing, able, and ready to take the property upon the terms offered by the principal, although the sale fails because of a defect in the principal's title, of which the broker had no notice." Little v. Fleishman, 24 L. R. A. (N.S.) 1182–1185, and cases cited.

By the Court, COLEMAN, J.:

This is an action instituted for the purpose of recovering a judgment in the sum of $1,150 as commission for services rendered in procuring a purchaser for a certain ranch. Judgment was rendered in favor of plaintiff as prayed. Defendant has appealed from an order denying a motion for a new trial. For convenience the parties will be referred to as they were designated in the trial court.

There is no dispute as to the law applicable to the case, and only two questions of fact are involved, namely: Did the defendant employ the plaintiff to procure a purchaser for the ranch in question? and, secondly, Was the time for the finding of such purchaser extended? It is admitted that plaintiff found purchasers ready, able, and willing to buy.

In 1915 the defendant bought the ranch mentioned, taking title thereto, which he has ever since retained. He testified, however, that he purchased the ranch for one Yribarren, to whom he owed some money. The seller did not know Yribarren in the transaction. However, if the property was not purchased for Yribarren, it is evident that thereafter there was an agreement of sale entered into between the defendant and Yribarren, the defendant holding the title to protect himself, no doubt, until the purchase price should be fully paid.

On May 18, 1919, the defendant signed a writing agreeing with the plaintiff that, if plaintiff found a purchaser for the property prior to June 10 of that year, he should receive as his commission all for which the property sold in excess of $22,000. The defendant contends that, while the agreement was signed by him, it was signed in behalf of Yribarren, which he claims was well known to the plaintiff. He further contends that the time in which the plaintiff was authorized to sell was not extended. In the fall of 1919 the plaintiff found parties who were ready, able, and willing to purchase the property for $23,150, but the defendant refused to consummate the deal.

The plaintiff testified that, after the time limit stated in the written authorization given him by defendant to sell the property had expired, the defendant verbally notified him to continue his efforts to find a purchaser. He. also testified that, after he had induced Atcheson and McKenzie to purchase the property for $23,150, and to put up the sum of $500, he wrote to the defendant, who was in San Francisco, notifying him of what he had done, and that the purchasers would make further payments upon the execution of a deed and the furnishing of an abstract by the defendant showing a clear title to the property, and that thereafter defendant came to Reno and assured the plaintiff that the deal would be closed.

Atcheson, one of the prospective purchasers, testified that on the day the defendant came to Reno he had a

Opinion of the Court—Coleman, J.

talk with him; and Mr. Atcheson testified in part as follows:

"Well, I just got acquainted with him through Mr. Read, and I told him, I says, 'I bought that ranch of yours down there'; and he says, 'That is all right.' And I says, 'I paid $500'; I says, 'Did you get the money?' and he says, 'Yes.' And I says, 'I understand the man that is on the ranch is going to make some trouble—don't want to get off.' 'Well,' he said, 'If he make any trouble for me, it cost him lots of money.' 'Well,' he said, 'Atcheson, you get that land all right; I see that fellow and I don't know what he means.' 'Well,' I says, 'Pradere, I am a stranger here in Reno, and this man Read is a stranger'; and I says, 'You are a stranger to me'; and I says, 'Has Read got the authority to sell this place?' And he says, 'Yes, sir; whatever John T. Read does,' he says, 'is all right. He attends to my business.' "

The undisputed evidence shows that at the time an agreement was reached between the plaintiff, acting as the agent for the defendant, and Atcheson and McKenzie, for the sale of the property, $500 was deposited in bank to the credit of the defendant by Atcheson and McKenzie; that it remained there several months, and that the defendant never offered to return it until suit was brought for its recovery.

The defendant testified that he did not own the ranch; that it was the property of Yribarren, and that the agreement of May 18 was signed by him in behalf of Yribarren, which, he testified, was understood by the plaintiff. He denied having extended the time for the sale, as claimed by the plaintiff. He testified also that, when he was notified of the deal which plaintiff had worked up with Atcheson and McKenzie, he told the plaintiff to see Yribarren, and that whatever was satisfactory to him would be all right.

It appears that Yribarren could sign his name, and made a practice of signing checks upon his bank account. He testified that he instructed the defendant, in the

presence of the plaintiff, to sign the agreement of May 18 in his behalf.

There is considerable immaterial testimony in the record, to which we need not advert. We are of the opinion that the evidence justified the findings and judgment. The written authorization to sell is signed by the defendant, as a party thereto. In view of the fact that Yribarren could sign his name, it hardly seems probable that he would have asked the defendant to sign the agreement for him. But, aside from the disputed testimony of the parties, there is testimony of Mr. Atcheson, who is not in the least interested in the result of the action, who testified that the defendant stated to him, after the $500 had been paid, that the plaintiff had authority to sell the property. There is also the circumstance of the defendant retaining the $500 cash payment for months, and until suit was brought for its recovery.

We think the trial court was justified in concluding that the defendant entered into the contract on his own account, and that he extended the time within which the sale might be made.

The judgment is affirmed.